Embassy of the United States of America

## Certificate to be Attached to Documentary Evidence Accompanying Requisitions in the United States for Extradition

## AMERICAN FOREIGN SERVICE

Ottawa, Canada, November 20, 2006
(Place and date)

     I, Keith Powell, II, Consul General of the United States of America at

Ottawa, Canada, hereby certify that the annexed papers, being supporting documentation,

are proposed to be used upon an application for the extradition from the United States of Raelin

Shawn Coleman,  who is wanted to stand trial on one count of attempted murder, one count of

discharge of a firearm with the intent to endanger life, one count of possession of a weapon for the

purpose of committing an offence and one count of pointing a firearm, in contravention of sections

239, 244(b), 88(1) and 87(2) , alleged to have been committed in the Province of Ontario, are properly

and legally authenticated so as to entitle them to be received in evidence for similar purposes by the

tribunals of Canada, as required by Title 18, United States Code, Section 3190.

     In witness whereof I hereunto sign my name and cause my seal of office to be

affixed this  20th day of November,  2006.



    Keith Powell, II
    Consul General of the
    United States of America

ATTACHMENT  I

Department of Justice
Canada

Ministère de la Justice
Canada

Ottawa, Canada
K1A 0H8

## CERTIFICATE OF AUTHENTICATION

IN THE MATTER OF the extradition of *Raelin
Shawn Coleman* from the United States of
America to Canada on charges of attempt
murder, discharge of a firearm with intent to
endanger life, possession of a weapon for the
purpose of committing an offence and pointing
a firearm

I, Claude Lefrançois, Senior Counsel, International
Assistance Group, Department of Justice of Canada, do
hereby certify:

THAT attached to this Certificate is authenticated
documentation presented by Canada in support of the
extradition of *Raelin Shawn Coleman* who is wanted to
stand trial on one count of attempt murder, one count
of discharge of a firearm with intent to endanger life,
one count of possession of a weapon for the purpose of
committing an offence and one count of pointing a
firearm, in contravention of sections 239, 244(b),
88(1) and 87(2) of the *Criminal Code* of Canada
respectively.

THAT the documentation attached to this certificate is
composed of:

- the certified true copy of the Affidavit of law of
  DEBORAH LYNN KRICK, Crown Prosecutor, Ministry of
  Attorney General of Ontario;

- the certified true copy of the Affidavit of fact
  of Detective EDWARD HICKEY, peace officer, Windsor
  Police Service, to which is attached:

  - as Exhibit A, certified true copy of the
    Arrest Warrant;

# Canada

- 2 -

- as Exhibit B, certified true copy of the Information;

THAT Michelle Campbell whose original signature appears at the end of the Affidavit of DEBORAH LYNN KRICK is a Barrister & Solicitor and a Commissioner of Oaths in and for the Province of Ontario, having been duly commissioned and duly authorized by the laws thereof to administer oaths and to take affidavits within the said Province.

THAT Walter Costa whose signature appears at the end of the Affidavit of EDWARD HICKEY and on the exhibits thereto, is an Assistant Crown Attorney and a Commissioner of Oaths in and for the Province of Ontario, having been duly commissioned and duly authorized by the laws thereof to administer oaths and to take affidavits within the said Province.

THAT Corinne Pope who certified the copies of the Warrant for Arrest and Information, is a clerk of the Ontario Court of Justice, having been duly appointed to that office, and as such is empowered to certify such documents.

The Seal of the Minister of Justice of Canada is hereby affixed this 6th day of November 2006.

_____
Claude Lefrançois

| CANADA | ) | HER MAJESTY THE QUEEN |
| | ) | |
| PROVINCE OF ONTARIO | ) | v. |
| | ) | |
| TORONTO REGION | ) | RAELIN SHAWN COLEMAN |

IN THE MATTER of a request by Canada for the extradition of Raelin Shawn Coleman from the United States of America with respect to offences under the *Criminal Code of Canada*.

## AFFIDAVIT OF DEBORAH LYNN KRICK

I, Deborah Krick, of the City of Toronto in the Region of Toronto in the Province of Ontario, Canada, a lawyer in the Ministry of the Attorney General for the Province of Ontario, **MAKE OATH AND SAY AS FOLLOWS**:

## A. OVERVIEW OF THIS EXTRADITION REQUEST

1.     Canada is seeking the extradition of Raelin Shawn Coleman in order that Mr. Coleman may face charges that have been laid against him in Ontario, Canada under the *Criminal Code of Canada*. The outstanding charges against Raelin Coleman are as follows: attempt murder, discharge of a firearm with intent to endanger life, possession of a weapon for the purpose of committing an offence and pointing a firearm.

2.     One of the peace officer's investigating Mr. Coleman's case is Detective Edward Hickey of the Windsor Police Service. His affidavit accompanies this request. Attached to Detective Hickey's affidavit is a certified true copy of the Information charging Raelin Shawn Coleman with attempt

- 2 -

murder, discharge of a firearm with intent to endanger life, possession of a weapon for the purpose of committing an offence and pointing a firearm and a certified copy of the Warrant for Arrest which was validly issued and remains in force in Canada. Detective Hickey has provided information identifying Raelin Shawn Coleman, including a photograph and fingerprints. Raelin Shawn Coleman is currently incarcerated and his earliest release date is December 23, 2006.

3.      I have carefully reviewed Dective Hickey's affidavit and all of the attached exhibits. I verily believe that Raelin Shawn Coleman is charged with one count of attempt murder, one count of discharge of a firearm with intent to endanger life, one count of possession of a weapon for the purpose of commiting an offence and one count of pointing a firearm, occurring on August 23, 2005, in Windsor, Ontario.

**B.**     **QUALIFICATIONS**

4       I am a citizen of Canada. I reside in the City of Toronto in the Province of Ontario. In July of 2004, I was called to the Bar of the Province of Ontario and was enrolled as a solicitor of the Court of Appeal for Ontario. From that time until the present time I have been, and continue to be, a member in good standing of the Law Society of Upper Canada, and, as such, I have been, and continue to be, entitled to practice law as a barrister and solicitor in the Province of Ontario. From July of 2004 until the present time, I have practised law, and continue to practice law, in the employment of the Ministry of the Attorney General for the Province of Ontario. During that period I have held, and continue to hold, the position of Counsel with the Crown Law Office - Criminal of the Ministry of the Attorney General for the Province of Ontario, at the Ministry's offices, which are presently located at 720 Bay Street, Toronto, Ontario, Canada.

5       The Crown Law Office -Criminal is a branch of the Criminal Law Division of the Ministry of the Attorney General for the Province of Ontario. At present the Crown Law Office -Criminal is comprised of approximately 65 lawyers, each of whom specialize in criminal law. The main

- 3 -

responsibility of the Crown Law Office - Criminal involves the representation of the Crown in all criminal appeals in indictable matters arising in Ontario. Such appeals are heard by the Court of Appeal for the Province of Ontario and, in certain cases, by the Supreme Court of Canada. The Crown Law Office - Criminal also prosecutes serious crimes involving such matters as complex fraud, corruption, organized crime, and offences against the administration of justice. The Crown Law Office - Criminal is also responsible for various other activities, which include, in particular, the preparation of applications for the extradition or the rendition from foreign jurisdictions to Canada of persons who have been charged with the commission of criminal offences in Ontario.

6.      From July of 2004 until the present time, in my capacity as Counsel in the Crown Law Office – Criminal, I have represented the Crown in criminal matters before the Superior Court of Justice, before the Court of Appeal in Ontario and before the Supreme Court of Canada. My administrative duties include the conduct of various Mutual Legal Assistance requests and extradition files in the Crown Law Office – Criminal arising from Ontario matters. Through my training and experience, I am familiar with criminal law and procedure of Canada.

## C.      STATEMENT OF PARTICULARS

### i)      Warrants of Arrest

7.      Under Canadian law, a person is formally charged with a crime when an Information is sworn before a justice (i.e. a Justice of the Ontario Court of Justice or a Justice of the Peace). The charge is formally instituted when an informant, usually a peace officer, swears under oath that he or she has reasonable and probable grounds to believe that an accused has committed the offence(s) detailed in the Information.

8.      Canada seeks the extradition of Raelin Shawn Coleman on the charges of attempt murder, discharge of a firearm with intent to endanger life, possession of a weapon for the purpose of

- 4 -

committing an offence and pointing a firearm, contrary to the *Criminal Code of Canada*, as set out in the Information sworn August 26, 2005 by Detective Tim Talbot of the Windsor Police Service. Justice of the Peace Hebert issued an Arrest Warrant on these charges on August 26, 2005. The Warrant is of full force and effect in Canada. Certified copies of the Information and Warrant for Arrest are attached as Exhibits B and A, respectively, to the affidavit of Detective Edward Hickey. Corinne Pope, a clerk of the court certified copies of the Information and the Arrest Warrant on August 26, 2005.

**i)      Description of the Accused**

9.      Raelin Shawn Coleman was born on August 22, 1985 in Michigan. He is a black male with brown eyes and black hair. Mr. Coleman weighs approximately 164kg and is 193cm tall. A photograph of Raelin Coleman and a copy of his fingerprint form are found in the affidavit of Detective Hickey and the attached exhibits.

**D.      *CRIMINAL CODE* PROVISIONS**

10.      The *Criminal Code of Canada*, Revised Statutes of Canada, 1985, chapter C-46, as amended, is a statute duly enacted by the Parliament of Canada containing the law relating to criminal offences and criminal procedure for the whole of Canada and every province thereof, including the Province of Ontario.  The *Criminal Code* was in force at the time of the commission of the alleged offences in the within case, and continues to be in force at the present time.

11.      Under Canadian law, criminal offences are divided into three categories:

        i)      indictable offences;
        ii)      summary conviction offences;
        iii)      offences that are, at the election of the prosecution, either indictable or summary conviction.

Canadian law has abolished the common law division of offences into felonies and misdemeanours.

- 5 -

However, indictable offences are roughly equivalent to felonies and summary conviction offences are roughly equivalent to misdemeanours.  Generally speaking, indictable offences are the most serious offences carrying the most severe penalties; summary conviction offences are generally less serious offences and carry less severe penalties.

12.    The offences of attempt murder and discharge of a firearm with intent to endanger life are indictable offences. The offences of possession of a weapon for the purpose of committing an offence and pointing a firearm, are at the election of the prosecutor, either indictable or summary conviction. The Crown has not yet made an election in relation to these charges. According to Canadian law, they are deemed to be indictable until the prosecution makes an election. The prosecuting Crown in this case intends to proceed by way of indictment on these two charges.

13.    The *Criminal Code* contains provisions that codify the offences of attempt murder, discharge of a firearm with intent to endanger life, possession of a weapon for the purpose of committing an offence and pointing a firearm.  Those provisions as they existed during the time-frame of the alleged offences, duly enacted and proclaimed into force, and as would be applicable in the event of a trial in the within case, are set out in sections i) to iv) below.

**i)    Attempt Murder**

14.    In general terms, the various provisions in the *Criminal Code* relating to the offence of murder begin with the concept that a person who causes the death of another human being commits a homicide. Homicide may be either non-culpable or culpable.  Non-culpable homicide is not an offence in Canada. Culpable homicide is further subdivided into murder, manslaughter or infanticide and usually occurs when death is caused by means of an unlawful act or by criminal negligence. Murder is specifically defined in the *Criminal Code* and requires either a subjective intent to kill, or the subjective intent to cause bodily harm that the assailant knows is likely to cause death and is reckless as to whether or not death ensues. Depending upon the circumstances of the killing, murder is classified as either second degree murder or first degree

- 6 -

murder. The *Criminal Code* also defines an attempt.

15.   The punishment for attempt murder includes a maximum sentence of imprisonment for life and a minimum sentence of four years imprisonment where a firearm is used in the commission of the offence.

16.   The *Criminal Code* provides as follows with respect to homicide:

222.   (1)   A person commits homicide when, directly or indirectly, by any means, he causes the death of a human being.
        (2)   Homicide is culpable or not culpable.
        (3)   Homicide that is not culpable is not an offence.
        (4)   Culpable homicide is murder or manslaughter or infanticide.
        (5)   A person commits culpable homicide when he causes the death of a human being,
              (a)   by means of an unlawful act,
              (b)   by criminal negligence,
              (c)   by causing that human being, by threats or fear of violence or by deception, to do anything that causes his death, or
              (d)   by wilfully frightening that human being, in the case of a child or sick person.

17.   Murder is defined in Section 229 of the *Criminal Code* as follows:

229.   Culpable homicide is murder
        (a)   where the person who causes the death of a human being
              (i)    means to cause his death, or
              (ii)   means to cause him bodily harm that he knows is likely to cause his death, and is reckless whether death ensues or not;
        (b)   where a person, meaning to cause death to a human being or meaning to cause him bodily harm that he knows is likely to cause his death, and being reckless whether death ensues or not, by accident or mistake causes death to another human being, notwithstanding that he does not mean to cause death or bodily harm to that human being.

18.   Murder is classified in Section 231 of the *Criminal Code* as follows:

231.   (1)   Murder is first degree murder or second degree murder.
        (2)   Murder is first degree murder when it is planned and deliberate.
        (3)   Without limiting the generality of subsection (2), murder is planned and

- 7 -

deliberate when it is committed pursuant to an arrangement under which money or anything of value passes or is intended to pass from one person to another, or is promised by one person to another, as consideration for that other's causing or assisting in causing the death of anyone or counselling another person to do any act causing or assisting in causing that death.

. . . . .

(7)     All murder that is not first degree murder is second degree murder.

19.     Section 239 of the *Criminal Code* provides the punishment for attempt murder:

**239.** Every person who attempts by any means to commit murder is guilty of an indictable offence and liable

(a) where a firearm is used in the commission of the offence, to imprisonment for life and to a minimum punishment of imprisonment for a term of four years; and

(b) in any other case, to imprisonment for life

20.     Section 24 of the *Criminal Code* defines attempt:

**24.** (1) Every one who, having an intent to commit an offence, does or omits to do anything for the purpose of carrying out the intention is guilty of an attempt to commit the offence whether or not it was possible under the circumstances to commit the offence.

Question of law

(2) The question whether an act or omission by a person who has an intent to commit an offence is or is not mere preparation to commit the offence, and too remote to constitute an attempt to commit the offence, is a question of law.

21.     Section 2 of the *Criminal Code* defines firearm as follows:

"firearm" means a barrelled weapon from which any shot, bullet or other projectile can be discharged and that is capable of causing serious bodily injury or death to a person, and includes any frame or receiver of such a barrelled weapon and anything that can be adapted for use as a firearm;

22.     Weapon is defined in s. 2 of the *Criminal Code* as follows:

"weapon" means any thing used, designed to be used or intended for use
(a) in causing death or injury to any person, or

- 8 -

(b) for the purpose of threatening or intimidating any person
and, without restricting the generality of the foregoing, includes a firearm;

## ii)   Discharge of a Firearm with Intent to Endanger Life

23.   Section 244 of the *Criminal Code* sets out the offence of discharging a firearm. This is an indictable offence and carries a minimum punishment of four years imprisonment. The maximum punishment for this offence is fourteen years imprisonment. Subsection (b) of 244 addresses when a firearm is discharged with the intent to endanger life. This is the section Raelin Shawn Coleman is charged with. Section 244 of the *Code* is as follows:

> **244**. Every person who, with intent
> (a) to wound, maim or disfigure any person,
> (b) to endanger the life of any person, or
> (c) to prevent the arrest or detention of any person,
>
> discharges a firearm at any person, whether or not that person is the person mentioned in paragraph (a), (b) or (c), is guilty of an indictable offence and liable to imprisonment for a term not exceeding fourteen years and to a minimum punishment of imprisonment for a term of four years.

## iii)   Possession of a Weapon for the Purpose of Committing an Offence

24.   The offence of possessing a weapon for the purpose of committing an offence is defined in s. 88 of the *Criminal Code*. This offence is indictable at the Crown's election. In this case, the Crown will elect to proceed by indictment. Therefore, Raelin Shawn Coleman will be liable for a term of ten years imprisonment. Section 88 of the *Code* states the following:

> **88**. (1) Every person commits an offence who carries or possesses a weapon, an imitation of a weapon, a prohibited device or any ammunition or prohibited ammunition for a purpose dangerous to the public peace or for the purpose of committing an offence.
>
> Punishment
> (2) Every person who commits an offence under subsection (1)
> (a) is guilty of an indictable offence and liable to imprisonment for a term not exceeding ten years; or
> (b) is guilty of an offence punishable on summary conviction.

#### iv)     Pointing a Firearm

25.     The offence of pointing a firearm is codified in s. 87 of the *Criminal Code*. This offence is indictable at the Crown's election. In this case, the Crown will elect to proceed by indictment. Therefore, Raelin Shawn Coleman will be liable for a term of five years imprisonment. Section 87 of the *Code* states the following:

> **87.** (1) Every person commits an offence who, without lawful excuse, points a firearm at another person, whether the firearm is loaded or unloaded.
>
> Punishment
> (2) Every person who commits an offence under subsection (1)
> (a) is guilty of an indictable offence and liable to imprisonment for a term not exceeding five years; or
> (b) is guilty of an offence punishable on summary conviction.

### E.     NO LIMITATION PERIOD IN THIS CASE

26.     In Canada there is no statutory limitation period of general application in respect of indictable offences.  Apart from certain particular statutory time limitations relating to specific indictable offences, the common law rule, *nullum tempus occurrit regi*, still applies to indictable offences.  Therefore, in the absence of a specific statutory provision to the contrary, the initiation of a prosecution of an indictable offence is not barred by the passage of any period of time.

27.     In view of the fact that the Crown is proceeding by indictment on all charges, there is no limitation period against the prosecution of the criminal offences on which extradition is being sought.

### F.     OPINION

28.     In Canada, in order to find an accused guilty of an offence contrary to the *Criminal Code*, the trier of fact must be satisfied that the guilt of the accused has been established beyond a reasonable doubt.

- 10 -

29.     I have carefully reviewed the affidavit of Detective Edward Hickey and the accompanying exhibits.

30.     I attest that the evidence disclosed in the affidavit of Detective Hickey establishes a *prima facie* case that Raelin Shawn Coleman is guilty of attempt murder, discharge of a firearm with intent to endanger life, possession of a weapon for the purpose of committing an offence and pointing a firearm. That is to say, a reasonable jury, properly instructed in the law could, on that evidence, find beyond a reasonable doubt that Raelin Shawn Coleman is guilty of these offences. I am also of the opinion that these offences are properly triable in the Province of Ontario, and that the criminal courts in the Province of Ontario have jurisdiction to try Raelin Shawn Coleman for these offences.

31.     I am of the opinion that the offences with which Raelin Shawn Coleman has been charged are not of a political character.  I am also of the opinion that the charges have not been laid against Raelin Shawn Coleman for the purpose of prosecuting him on account of his race, nationality, religion or political opinion, and that, if returned to Canada, he will not be prejudiced by reason of his race, nationality, religion or political opinion.

32.     This affidavit is made in good faith in support of a request by Canada for the extradition of Raelin Shawn Coleman with respect to the aforementioned criminal offences, and for no improper purpose.

SWORN BEFORE ME at the City              )
of Toronto in the Toronto Region         )
in the Province of Ontario, Canada,      )
this 6 day of _November_                 )
2006.                                    )
                                             Deborah Lynn Krick

Barrister & Solicitor
& Commissioner of Oaths



| CANADA | } | HER MAJESTY THE QUEEN |
|---|---|---|
| PROVINCE OF ONTARIO | } | VS. |
| SOUTHWEST REGION | } | RAELIN SHAWN COLEMAN |

IN THE MATTER of the request by Canada for the Surrender of Raelin Shawn Coleman.

**AFFIDAVIT OF EDWARD HICKEY**

I, Edward Hickey, of the City of Windsor in the Southwest Region, in the Province of Ontario, Canada, a Police Officer, **MAKE OATH AND SAY AS FOLLOWS :**

1. I, Detective Edward Hickey, am a member of the Windsor Police Service, and have been so employed since July 25,1988.  I am currently assigned to the General Investigation Branch of the Investigation Division.  I am one of the Detectives who has been assigned to investigate the matter of Regina vs. Raelin Shawn Coleman, and as such have knowledge of the matters contained in my affidavit.  Where the matters hereinafter sworn to are not within my direct knowledge, I verily believe them to be true.

2. Canada seeks the surrender of Raelin Shawn Coleman on the following charges:
   a) Raelin Shawn Coleman and Ulimo Rirash and Halimo Rirash on or about the 23rd day of August in the year 2005 at the City of Windsor in the said region did attempt to murder Timothy A. Fisher by discharging a firearm, contrary to section 239 of the Criminal Code of Canada.
   b) Raelin Shawn Coleman on or about the 23rd day of August in the year 2005 at the City of Windsor in the said region did, with intent to endanger the life of Tim Fisher, discharge a firearm, namely a shotgun at Tim Fisher, contrary to Section 244, clause (b) of the Criminal Code of Canada.
   c) Raelin Shawn Coleman on or about the 23rd day of August 2005 at the City of Windsor in the said region did possess a weapon, namely a shotgun, for the purpose of committing an offence, contrary to Section 88, subsection (1) of the Criminal Code of Canada.
   d) Raelin Shawn Coleman on or about the 23rd day of August 2005 at the City of Windsor in the said region did, without lawful excuse, point a firearm, namely a shotgun at another person, namely Tim Fisher, contrary to Section 87, subsection (2) of the Criminal Code of Canada.

Attached as exhibit "A" to this affidavit is a certified copy of the arrest warrant issued by Justice of the Peace Hebert on the 26th August, 2005, for the arrest of Raelin Shawn Coleman. The arrest warrant is presently outstanding in respect of the charges mentioned in the aforementioned information. The warrant of arrest authorizes police to arrest Raelin Shawn Coleman, and bring him before the courts for the purposes of the criminal proceedings that have been instituted against him.

4. Attached as exhibit "B" to this affidavit is a certified copy of the Information, sworn before Justice of the Peace Hebert, on 26th August, 2005, which sets out the charges against Raelin Shawn Coleman.

5. Attached as exhibit "C" to this affidavit is a true copy of a photograph of Raelin Coleman dated the 23rd August 2005, along with his fingerprints and record card. This was provided to me by the Oakland County Sheriff's Department, Oakland County Michigan.

6. As stated earlier in the affidavit, I am one of the Detectives assigned to investigate the shooting of Timothy Fisher at 0227 hours, on the 23rd August, 2005, at 1348 Elsmere, Windsor, Ontario, Canada.

7. I have read the transcript of the video statement given by Timothy Fisher to Detective W. Parsons. He states that about 0030 – 0100 hours he was asleep at his residence, 1348 Elsmere in the upper, and awakened by people arguing in his apartment. His sister, Crystal Fisher, was arguing with her former roommate, Ulimo Rirash, about some furniture they had shared while they lived together. Also in the apartment were Ulimo Rirash's sister, Halimo Rirash, and her boyfriend, Raelin Shawn Coleman. Timothy Fisher was upset at having been awakened, and ordered them to leave, and come back at a more decent hour. They left on their own accord in what Timothy Fisher described as Raelin Shawn Coleman's dark colored Ford Taurus, a car he has seen him driving in the past.

8. About an hour and a half later, Timothy Fisher, was sitting on his front porch with a couple of his downstairs neighbors, Hailey Tymczak and Tiffany Dorazio. He observes the same Ford Taurus that he had seen leave his residence earlier, pull up in front of his residence. Raelin Shawn Coleman, Ulimo Rirash, Halimo Rirash, and a third girl he knows as Ifrah Ali, exit the car. The three girls approach the porch, and make attempts to try and get inside the residence again. Raelin Shawn Coleman remained on the front lawn.

Timothy Fisher confronts Halimo Rirash and begins to remove her from the porch. In the process he observes Raelin Shawn Coleman, who is standing on the front lawn, holding a shotgun down by his leg. Halimo Rirash begins to run around behind Raelin Shawn Coleman, and once she finds herself out of the way, yells to Raelin Shawn Coleman to shoot him. He raises the gun in the direction of Timothy Fisher, who responds by moving towards him in an attempt to grab the gun. Raelin Shawn Coleman fires the gun at Timothy Fisher striking him in the upper left thigh area. After the shot was fired, all four parties; Raelin Shawn Coleman, Ulimo Rirash, Halimo Rirash, and Ifrah Ali, fled to the dark colored Ford Taurus and took off southbound on Elsmere, with Raelin Shawn Coleman driving.

10. Timothy Fisher was treated at the scene by the first uniformed police officers responding, as well as ambulance attendants for a severe gunshot wound to his upper left thigh. He was subsequently transported to Hotel Dieu Hospital.

11. I have read the transcript of the video statement of Ifrah Ali to Detective W. Parsons. She states that her friends, Ulimo Rirash and Halimo Rirash, pick her up at her residence, 3426 Millen, in a dark colored Ford Taurus, at 0030 hours on the 23rd August, 2005. Driving the car was Raelin Shawn Coleman. They drive around talking about the dispute between Ulimo Rirash and Crystal Fisher, over the furniture. They decide to return to Timothy Fisher's residence, but first Raelin Shawn Coleman drops the girls off in downtown Windsor, stating that he is going home to Detroit to pick up a gun.

12. Ifrah Ali, along with Ulimo and Halimo Rirash, walk to the Tim Horton's located at Park and Goyeau in the City of Windsor. They order some drinks, awaiting the return of Raelin Shawn Coleman. Upon his return, they go out to his car and she see's him remove a long barreled gun from the trunk and place it in the backseat of the car. She also saw him take bullets that he kept in a shoe in the trunk and load the gun, although she does not recall how many rounds he loaded.

13. Raelin Shawn Coleman drives over to 1348 Elsmere with Ulimo and Halimo Rirash, and Ifrah Ali. The girls got out of the car and approached the porch. Ifrah Ali says that she see's Timothy Fisher, whom she knows, along with two other girls on the porch. An argument breaks out amongst all the parties and Timothy Fisher ends up confronting Raelin Shawn Coleman on the front lawn. Ifrah Ali see's Raelin Shawn Coleman pointing the gun in the direction of Timothy Fisher's legs, and hears the gun go off, but doesn't believe that he was actually shot. She thought that he was faking.

14. After the shot was fired, all four parties, Raelin Shawn Coleman, Ulimo and Halimo Rirash, and Ifrah Ali, returned to the car, and left the area. They drove around town and stopped at the Detroit River where she saw Raelin Shawn Coleman throw the gun into the river. He returned to the car, drove to the 7-11 Convenience store where he dropped off the three girls, and crossed the bridge back into the United States.

15. I am advised by way of the written report of Constable Richard Sieberer of the Windsor Police Service that he arrives at 1348 Elsmere at 0230 hours and observes Timothy Fisher on the front porch bleeding from his left leg. He is being treated by his sister, Crystal Fisher, Hailey Tymczak, and Tiffany Dorazio, as well as Constable Woods. Constable Richard Sieberer spoke with Crystal Fisher and Hailey Tymczak, who advised him that the suspects were two females whom they identified as Ulimo and Halimo Rirash, and the shooter as Halimo's boyfriend, Raelin Shawn Coleman. Both girls know all three parties. They identified the car they were traveling in as a dark colored Ford Taurus with Michigan plates.

16. Constable Richard Sieberer obtained descriptions of the suspects. Raelin Shawn Coleman was described as a black male, 19 years old, dark complexion, buzz cut, and skinny build. He was wearing a short sleeve golf shirt with multiple colors, and jeans. Halimo Rirash is described as a female black, Somalian, skinny build, and black curly hair. Ulimo Rirash is described as a black female, Somalian, five foot two inches tall, short black hair, and about 140-150 pounds. All parties at the scene were familiar with the suspects. Constable Richard Sieberer had the descriptions of the suspects broadcasted, as well as the description of the car they were seen driving in.

17. I am advised by way of the written statement of Joseph Moore, taken by Constable David Drummond, that he resides in the upper apartment of 1348 Elsmere, with Timothy Fisher, and his sister Crystal Fisher. On Tuesday, August 23rd, 2005, at 0030 hours, he was at home having a cigarette on the front porch, and observed three of Crystal Fisher's friends show up. He identified these parties as Raelin Shawn Coleman, Ulimo Rirash, and her sister Halimo Rirash. These three parties went up to the upper apartment, and he followed shortly, after he had finished his cigarette.

18. Once upstairs, Joseph Moore observed everyone arguing over some furniture. Timothy Fisher was upset at having been woken up at such a late hour, and was demanding that everyone leave. Raelin Shawn Coleman, along with Ulimo and Halimo Rirash left, but the sisters threatened to return later with some friends, and get the furniture back. Also present were the lower tenants, Hailey Tymczak and Tiffany Dorazio.

9. After the argument was over, and all the combatants had left, Joseph Moore returned to bed and fell asleep. Someone yelling that his roommate, Timothy Fisher, had been shot later awakened him. He got up and went downstairs, and observed Timothy Fisher in a lot of pain, and assisted in contacting 911. Hailey Tymczak told him that Raelin Shawn Coleman had been the one who had shot Timothy Fisher in the leg.

20. I am advised by way of a written statement of Hailey Tymczak, taken by Constable David Drummond, that she is a resident of 1348 Elsmere in the lower. She lives there with her two-year-old daughter Clowey, and her sister, Tiffany Dorazio. She states that she heard some sort of an argument going on upstairs. She went up to find out what was happening and observed Timothy Fisher, his sister Crystal Fisher, and their roommate Joseph Moore, arguing with two black females, and a black male, names of which she did not know. They were asked to leave, and they did.

21. While having a smoke on the front porch of her residence with Timothy Fisher and Joseph Moore, Hailey Tymczak observes a black Ford Taurus pull up in front of the house, and the same two black females, and black male who had been there earlier got out of the car, and approached the porch. The two black females began challenging Hailey Tymczak to a fight, and she observed Timothy Fisher yell in the direction of the male black and told him to leave. She observed the male black, whom she now believed to be Raelin Shawn Coleman, return to his car and retrieve a shotgun, and return to the middle of the front yard. She described him as wearing a pastel multi-colored golf shirt, and jeans. Timothy Fisher was now on the front lawn as well. She saw Raelin Shawn Coleman point the gun in Timothy Fisher's direction, and shoot him in the left upper thigh area. After the shot was fired the two girls ran to the car, and Raelin Shawn Coleman casually walked back to the car, and drove off southbound on Elsmere.

22. I am advised by way of a written statement by Crystal Fisher, taken by Constable David Drummond, that she is a resident of 1348 Elsmere in the upper apartment whom she shares with her brother Timothy Fisher, and friend Joseph Moore. At about midnight on the 23rd August 2005, three parties who she identified as Ulimo and Halimo Rirash, and Halimo's boyfriend, Raelin Shawn Coleman, attended her residence. Crystal Fisher used to be roommates with Ulimo Rirash. They had come by to retrieve some of the furniture that they used to share, and an argument had broken out. This argument had awakened her brother, Timothy Fisher and her other roommate, Joseph Moore. Timothy Fisher ordered them all out, and the three of them left, threatening to return later with fifteen other people.

3. At 0220 hours she was laying in bed when she heard a loud bang. She looked out her window and saw Raelin Shawn Coleman getting into his car, which was parked out front of the house, which she described as a dark colored four door Ford Taurus. She knows this to be his car, having been in it several times in the past. She could not see anyone else in the car, and saw it drive away southbound on Elsmere. Although she couldn't tell what he was wearing while looking out the window, she described the clothing he had been earlier wearing as a multi colored short sleeve shirt with jean shorts, and running shoes. Crystal Fisher went downstairs and observed the injury to her brother's leg, and helped him until ambulance arrived. She further stated that she had been over at Raelin Shawn Coleman's residence in Michigan about a year ago. At that time he had shown her a shotgun that his brother had given him for protection.

24. I have read the written report of Constable Allison Lundie of the Windsor Police Service, who states that on Tuesday, August 23rd 2005 at 0235 hours, herself along with her partner, Constable Richard Antal received information regarding a shooting that had taken place at 1348 Elsmere. Further information was that the suspect was driving a dark colored Taurus, and a possible suspect "Raelin". The Constables were given a cell phone number, 562-5210, that came back to Ifrah Ali at an address at 3426 Millen.

25. Constables Allison Lundie, Richard Antal, along with Darius Goze and Adam Appleyard attended the area of 3426 Millen, checking for the suspect vehicle. They eventually attended 3426 Millen, spoke with residents there, who advised that Ifrah Ali was not home. Upon leaving the address the Constable Allison Lundie observed three females standing along the street, and one of the females was talking on a cell phone. As she approached the females, a cab pulled up and two of them got into the cab, and it pulled away. As the cab passed Constable Allison Lundi she could hear the occupants state, "don't say anything, don't trust the cops", and "I fuckin hate the cops, I really fuckin hate female cops!" The female on the cell phone remained behind. Constable Allison Lundie spoke with the remaining female who identified herself as Ifrah Ali. The cell phone she was talking into was the same number they had received information about earlier. The cab was broadcasted to other units on the road as the possible suspects, Ulimo and Halimo Rirash, were believed to be in the rear and headed to the Wyandotte and Ouellette area.

26. I have read the written report of Constable Scott Chapman of the Windsor Police Service that at 0407 hours on the 23rd of August 2005, he attended the area of Wyandotte and Ouellette to attempt to locate suspects wanted in a shooting that had occurred earlier that morning at 1348 Elsmere. He obtained information that the two female suspects were believed to be in a cab, identified as Ulimo and Halimo Rirash. Constable Richard Sieberer advised from the

scene of the shooting that these two females had been identified by witnesses and could be arrested on reasonable and probable grounds for attempted murder.

27. Constable Scott Chapman observed a Veteran Cab pull into the Burger King lot with two female blacks in the rear seat on Goyeau just north of Wyandotte. As he himself pulled into the lot, he observed the two female blacks exiting the rear of the cab. He asked the females for identification, and they verbally identified themselves as Ulimo and Halimo Rirash, and they matched the physical descriptions previously given. At 0410 hours Constable Scott Chapman placed both Ulimo and Halimo Rirash under arrest for attempted murder. They were subsequently transported to police headquarters, searched, and lodged in cells. During the lodging process, Halimo Rirash had an orange American Eagle bag, which was required to be searched as part of the lodging process. Inside the bag was found a men's striped multi-colored golf shirt, men's black pants, men's white socks, along with some toiletries, money, and assorted notes/notebooks. This clothing found in the bag matched the description of the clothing that Raelin Shawn Coleman had been wearing at the time of the shooting. These items were seized as evidence.

28. I have read the written report of Detective Paul Nawalany, who states that on Thursday, August 25 2005, he along with Detective's Tom Hartleib and Matt D'Asti attended the Southfield Police Department, in Southfield Michigan, in the United States, and met with Sergeant Gary Lask. They attended the residence of Raelin Shawn Coleman, at 20567 Oldham, apartment 201, in Southfield Michigan, but received no answer at the door. They then attended Raelin Shawn Coleman's place of employment, the Judson Center. Information was received from Raelin Shawn Coleman's immediate supervisor, Theresa Harris, who stated that he had left work early the previous evening at around 2100 hours, due to stress caused by his wife being detained in custody in Canada. She later advised that someone had phoned in sick for him at 0900 hours indicating that he wouldn't be in for work this afternoon either.

29. Detectives Paul Nawalany, Tom Hartleib, and Matt D'Asti returned to Raelin Shawn Coleman's address at 20567 Oldham, apartment 210. There they spoke to his brother Richard Coleman, and advised him of the investigation of the attempted murder of Timothy Fisher. They said that the purpose of the visit was not to arrest Raelin Shawn Coleman at this time, but to advise him there was a Canada wide arrest warrant for his arrest as a result of this investigation. A copy of the arrest warrant was provided to Richard Coleman. Richard Coleman told Detective Nawalany that he would attempt to contact his brother, and make arrangements to have him turn himself in, but indicated that he hadn't heard from him in several days.

0. I have read the written report of Detective Gerald Wakefield of the Southfield Police Department who states he received information, Raelin Shawn Coleman had been involved in a shooting in Windsor, Ontario, Canada. Border records indicate that the suspect vehicle, a 2000 Ford Taurus with Michigan plate XWR105, entered into the United States via the Ambassador Bridge at 0246 hours on the 23rd August 2005. Information was received, Raelin Shawn Coleman was associated to an address at 20567 Oldham in Southfield Michigan. Detective Gerald Wakefield attended the area of this address and located the suspect vehicle. Surveillance was conducted in relation to the address and vehicle. It was further learned that Raelin Shawn Coleman had an outstanding arrest warrant for traffic offences out of Redford Michigan.

31. I have read the written report of Sergeant Gary Lask of the Southfield Police Department who states, that he received information at 1100 hours on the 23rd August 2005 that a male party identified as Raelin Shawn Coleman was suspected in a shooting in Windsor, Ontario, Canada. His vehicle, a 2000 black Ford Taurus with Michigan plate XWR105, had been located at his residence, 20567 Oldham, and surveillance was set up on it. At 1600 hours, Sergeant Gary Lask observed the suspect get into his vehicle and begin driving. He subsequently conducted a vehicle stop, placing the lone male occupant, Raelin Shawn Coleman under arrest on the strength of the outstanding arrest warrant, and driving while his licence is suspended.

32. Sergeant Gary Lask conducted a vehicle inventory prior to impounding Raelin Shawn Coleman's vehicle. During the search he found and seized a shotgun shell described as Federal (red) 12 gauge, two and three quarter inch, seven and a half shot, heavy field load. This shell was found on the floor of the rear passenger seat, seized and lodged in property. This shell was similar in description to the shells found at the scene of the shooting, as well as the spent shell found in the shotgun, which was eventually found in the Detroit River where Ifrah Ali had indicated in her statement it had been thrown.

33. I spoke personally with Detective Mark Dennonville of the Windsor Police Service who advised that the Ontario Provincial Police Dive Team had come down to Windsor to conduct a search of the Detroit River where it is believed the shotgun was thrown. The dive team was in the water for all of eight minutes and found the shotgun, with a spent green Remington slug shotgun shell still in the chamber. Inside the shotgun were found two more unspent shells similar to the spent one, and two red Federal buckshot shells, similar to the one found in Raelin Shawn Coleman's vehicle. Detective Mark Dennonville learned from the dive team that oxidation (rust) begins a half hour after submersion in water. Only some minor rust was found on the shotgun, which lends credence to the fact that the gun had not been in the water for very

long.  The shotgun was seized by Constable Kevin Bleyendaal of the Forensic Identification Branch for forensic examination.

34. I have read the written report of Constable Duke Ing who states that he along with Constables Keith Broeckel, Anthony Coughlin, and Doug Tilson, all members of the Windsor Police Explosive Disposal Unit, conducted a search of the neighborhood surrounding the scene of the shooting at 1348 Elsmere.  With the use of a metal detector a metal slug was found in the ground at 1352 Elsmere, beside light pole number 22.  The slug was seized by Constable Kevin Bleyendaal for forensic examination.

35. I have spoken to Detective Wayne Parsons of the Windsor Police Service who states that Wanted Bulletins were distributed to both sides of the Ambassador Bridge, and Tunnel, both of which are major border points leading into Canada and the United States.  The bulletins indicate Raelin Shawn Coleman is wanted Canada Wide for attempted murder.  The bulletin contains his description, photo, and suspect vehicle used in the shooting.

36. I have personally read an article in the Windsor Star newspaper dated the 25t[h] August 2005 stating that Raelin Shawn Coleman is wanted for attempted murder, and an arrest warrant is outstanding for his arrest.

37. I have personally read the transcripts of Raelin Coleman's court appearance on Friday 27 January 2006 before the United States District Court, Eastern District of Michigan, Southern Division, in order to enter a guilty plea to a charge of Transportation of a Firearm in Interstate or Foreign Commerce With Intent to Commit a Crime.  The presiding judge was his Honor, George Caram Steeh.  The Assistant District Attorney was John Freeman, and Richard Helfrick represented Raelin Coleman.

38. The court read out the terms and conditions of Raelin Coleman's guilty plea, and he acknowledged he understood.  During the proceedings Raelin Coleman confirmed for the court he had transported a 12 gauge shotgun across the International Border from Detroit Michigan into Windsor Ontario.  He went on further, agreeing that the purpose of bringing the shotgun into Canada was to use in a confrontation he was having with someone in Windsor.  He indicated to the court that an individual was eventually shot in the leg because things got out of hand during their confrontation.  Raelin Coleman agreed that the gun was recovered in the Detroit River after female companion's he was in company with the night of the shooting, led police to its location.  Raelin Coleman threw the shotgun into the Detroit River prior to returning to the United States.  He acknowledged to the court that he understood his actions constituted a felony.

9. Assistant District Attorney, John Freeman, and the defense agreed to the sufficiency of the plea. The court accepted the guilty plea of Raelin Coleman for Transporting a Firearm in Interstate or Foreign Commerce. The court was adjourned until the 27 April 2006 for sentencing.

40. On the 15 May 2006 I contacted Richard Helfrick, the defense attorney for Raelin Coleman. He advised me that Raelin Coleman had been sentenced to 15-18 months custody. He is currently incarcerated in Milan FCI in Milan Michigan and has been designated to Gilmer FCI in West Virginia for the remainder of his sentence.

41. I spoke to Deanna Ellis who is a Legal Instruments Examiner for Milan FCI. She advised me that Raelin Coleman's transfer date has yet to be set. Gilmer FCI is located at 201 FCI Lane, Glenville West Virginia, 26351. His earliest release date from Gilmer FCI will be the 23rd December 2006. He is registered under #39901-039.

42. I make this affidavit in support of a request for the Extradition of Raelin Shawn Coleman, and for no other or improper purpose.

Sworn before me at the City of Windsor
In the Southwest Region in the Province
Of Ontario, Canada,
This  30  day of  October  , 2006

_____
Edward Hickey

_____
A Commissioner, etc.

I certify that this is the original affidavit of Edward Hickey

_____
A Commissioner, etc.

**WALTER COSTA**
Assistant Crown Attorney
Essex County
Ontario Court of Justice
200 Chatham Street East, 5th Floor
Windsor, ON N9A 2W3

# Exhibit "A"

## Certified Copy of Arrest Warrant Charging Raelin Coleman with Attempt Murder

THIS IS EXHIBIT _____*A*_____ TO THE

AFFIDAVIT OF *Edward Hickey*

SWORN BEFORE ME

THIS __30__ DAY OF *October* 18 *2006*

_____ *Walter Costa* _____

A Commissioner, etc.

**WALTER COSTA**
Assistant Crown Attorney
Essex County
Ontario Court of Justice
200 Chatham Street East, 5th Floor
Windsor, ON  N9A 2W3

**WARRANT FOR ARREST WITH OPTIONAL AUTHORIZATION TO ENTER A DWELLING HOUSE**
*MANDAT D'ARRESTATION AVEC AUTORISATION FACULTATIVE D'ENTRER DANS UNE MAISON*
*D'HABITATION*

No: 05 962

CANADA

Form / Formule 7

PROVINCE OF ONTARIO
*PROVINCE DE L'ONTARIO*

Sections / *Articles* 475, 493, 597, 800, and / *et* 803
of the *Criminal Code / du Code criminel*

SOUTHWEST
(Region/*Région*)

To the peace officers in the said Region and in the Province of Ontario:
*Aux agents de la paix dans ladite région et dans la province de l'Ontario :* 05 4202

Case/File No. / *N° du cas/dossier*

This warrant is issued for the arrest of COLEMAN, Raelin Shawn           22 Aug 1985
*Le présent mandat est décerné pour l'arrestation de*                (date of birth / *date de naissance*)

UNKNOWN                      , of the    CITY         of    SOUTHFIELD
(occupation / *profession*)        du/(de la)                      de

in the   STATE            of   MICHIGAN            , hereinafter called the accused.
*dans le(la)*            de                        *ci-après appelé(e) le prévenu.*

**WHEREAS** the accused has been charged that he/she,
*ATTENDU QUE le prévenu a été inculpé d'avoir,*

COUNT 1
on or about the 23rd day of August in the year 2005 at the City of Windsor in the said region
did attempt to murder Tim FISHER by discharging a firearm, contrary to Section 239 of the
Criminal Code of Canada.

(see Appendix "A" attached)

Date Aug 26/05

I hereby certify that I have compared this
document with the original and that it is a
true and correct copy thereof

**AND WHEREAS:\***
*ET ATTENDU QUE :\**

J'ai comparé le présent document a
l'original et je certifie qu'il

(a)   there are reasonable grounds to believe that it is necessary in the public interest to issue this warrant for the arrest of
      the accused (507(4), 512(1));
      *il existe des motifs raisonnables de croire qu'il est nécessaire dans l'intérêt public de décerner ce mandat pour*
      *l'arrestation du prévenu (507(4), 512(1));*

Clerk of the Court, Province of Ontario
Greffier, Province de l'Ontario

(b)   the accused failed to attend court in accordance with the summons served upon him/her (512(2));
      *le prévenu a omis d'être présent au tribunal en conformité avec la sommation qui lui a été signifiée (512(2));*

(c)   (an appearance notice or a promise to appear or a recognizance entered into before an officer in charge) was
      confirmed and the accused failed to attend court in accordance therewith (512(2));
      *(une citation à comparaître ou une promesse de comparaître ou un engagement contracté devant un fonctionnaire*
      *responsable) a été confirmé(e) et le prévenu a omis d'être présent au tribunal en conformité avec cette citation ou*
      *promesse ou cet engagement (512(2));*

(d)   it appears that a summons cannot be served because the accused is evading service (512(2));
      *il semble qu'une sommation ne peut être signifiée car le prévenu se soustrait à la signification (512(2));*

(e)   the accused was ordered to be present at the hearing of an application for a review of an order made by a justice and
      did not attend the hearing (520(5), 521(5));
      *il a été ordonné au prévenu de se présenter à l'audience d'une requête pour l'examen d'une ordonnance rendue par*
      *un juge et il ne s'y est pas présenté (520(5), 521(5));*

(f)   there are reasonable grounds to believe that the accused has contravened or is about to contravene the (summons or
      appearance notice or promise to appear *or undertaking or recognizance*) on which he was released (524(1),
      525(5), 679(6));
      *il y a des motifs raisonnables de croire que le prévenu a violé ou est sur le point de violer (sommation ou citation à*
      *comparaître ou promesse de comparaître ou une promesse ou un engagement) en raison duquel ou de laquelle il a*
      *été mis en liberté (524(1), 525(5), 679(6));*

AFFIDAVIT OF          S. Hickey                              TO THE

(g)   there are reasonable grounds to believe that the accused has since his/her release from custody on (any summons or
      appearance notice or promise to appear, *or an undertaking or a recognizance*) committed an indictable offence (524(1),
      525(5), 679(6));
      *il y a des motifs raisonnables de croire que, depuis sa mise en liberté sur (toute sommation ou citation à comparaître*
      *ou promesse de comparaître ou une promesse ou un engagement), le prévenu a commis un acte criminel (524(1),*
      *525(5), 679(6));*

SWORN BEFORE ME                      THIS IS EXHIBIT

THIS ___ DAY ___ appear ___           AFFIDAVIT OF ___

2000                                  SWORN BEFORE ME

_____           THIS 26 DAY OF August 19 2005
A Commissioner, etc.

\*   Initial applicable recital.
    *Parapher l'attendu qui s'applique.*

_____
A Commissioner, etc.

CCO-7-475-1 (rev. 07/04) (posted 13/08/04)     inCHARGE (12/04)

Appendix "A"
(COLEMAN, Raelin Shawn)

**COUNT 2 AND FURTHER THAT**
On or about the 23rd day of August in the year 2005 at the City of Windsor in the said region did, with intent to endanger the life of Tim FISHER, discharge a firearm, namely a shotgun at Tim FISHER, contrary to Section 244, clause (b) of the Criminal Code of Canada.

**COUNT 3 AND FURTHER THAT**
On or about the 23rd day of August in the year 2005 at the City of Windsor in the said region did possess a weapon, namely a shotgun, for the purpose of committing an offence, contrary to Section 88, subsection (1) of the Criminal Code of Canada.

**COUNT 4 AND FURTHER THAT**
On or about the 23rd day of August in the year 2005 at the City of Windsor in the said region did, without lawful excuse, point a firearm, namely a shotgun at another person, namely Tim FISHER, contrary to Section 87, subsection (2) of the Criminal Code of Canada.

Date Aug 26/05

I hereby certify that I have compared this document with the original and that it is a true and correct copy thereof

J'ai comparé le présent document a l'original et je certifie qu'il s'agit d'une copie conforme et exacte.

Clerk of the Court, Province of Ontario
Greffier, Province de l'Ontario

**WARRANT FOR ARREST WITH OPTIONAL AUTHORIZATION TO ENTER A DWELLING HOUSE**
*MANDAT D'ARRESTATION AVEC AUTORISATION FACULTATIVE D'ENTRER DANS UNE MAISON D'HABITATION*

Form / *Formule* 7
Sections / *Articles* 475, 493, 597, 800, and / *et* 803
of the *Criminal Code* / *du Code criminel*

(h) the accused was required by (an appearance notice *or* a promise to appear *or* a recognizance entered into before an officer in charge *or* a summons) to attend at a time and place stated therein for the purposes of the *Identification of Criminals Act* and did not appear at the time and place (502, 510);
*le prévenu devait en vertu (d'une citation à comparaître ou d'une promesse de comparaître ou d'un engagement contracté devant un fonctionnaire responsable ou une sommation) comparaître aux temps et lieu y indiqués aux fins de la Loi sur l'identification des criminels et a omis de comparaître aux temps et lieu ainsi indiqués (502, 510);*

(i) an indictment has been found against the accused and the accused has not appeared or remained in attendance before the court for his trial (597);
*un acte d'accusation a été présenté contre le prévenu et celui-ci n'a pas comparu ou n'est pas demeuré présent pour son procès (597);*

(j) **

**THIS IS THEREFORE**, to command you, in Her Majesty's name, forthwith to arrest the said accused and to bring him/her before the presiding Justice/Judge of the Superior Court of Justice/Ontario Court of Justice*** of the said Region or before me or any Justice in and for the said Region, to answer to the said charge.
*IL VOUS EST PAR LES PRÉSENTES enjoint, au nom de Sa Majesté, d'arrêter ledit prévenu et de l'amener devant le juge de paix ou juge président de la Cour supérieure de justice/Cour de justice de l'Ontario*** de ladite région ou devant moi ou tout juge de paix dans et pour ladite région, pour répondre à ladite inculpation.*

DATED this __26__ day of __AUGUST__ , yr. __2005__
*FAIT ce* _____ *jour de* _____ *an*

at the __CITY__
*á(au)*

of __WINDSOR__
*de*

in the Province of Ontario / *dans la province de l'Ontario*

_____
Judge, or Justice of the Peace / *Juge ou juge de paix*

** For any case not covered by recitals (a) to (i), insert recital in the words of the statute authorizing the warrant.
*Pour toute cas qui n'est pas couverte par les attendus a) à i), insérez l'attendu en empruntant les termes de la loi autorisant le mandat.*

*** Choose applicable recital.
*Choisir l'attendu qui s'applique.*

Date __Aug 26/05__
I hereby certify that I have compared this document with the original and that it is a true and correct copy thereof

J'ai comparé le présent document a l'original et je certifie qu'il s'agit d'une copie conforme et exacte.

_____
Clerk of the Court, Province of Ontario
*Greffier, Province de l'Ontario*

CCO-7-475-1 (rev. 07/04) (posted 13/08/04)   *inCHARGE (12/04)*

**WARRANT FOR ARREST WITH OPTIONAL AUTHORIZATION TO ENTER A DWELLING HOUSE**
*MANDAT D'ARRESTATION AVEC AUTORISATION FACULTATIVE D'ENTRER DANS UNE MAISON D'HABITATION*

Form / *Formule 7*
Sections / *Articles 475, 493, 597, 800, and / et 803*
of the *Criminal Code* / *du Code criminel*

## AUTHORIZATION TO ENTER A DWELLING HOUSE
## *AUTORISATION POUR ENTRER DANS UNE MAISON D'HABITATION*

[And where applicable] Whereas there are reasonable grounds to believe that the accused is or will be present in
*[S'il y a lieu] Attendu qu'il y a des motifs raisonnables de croire que le prévenu se trouve ou se trouvera dans*

........................................................................................................................

(here describe dwelling-house / *décrire ici la maison d'habitation* )

........................................................................................................................

This warrant is also issued to authorize you to enter the dwelling-house for the purpose of arresting or apprehending the accused at any time
*Le présent mandat est également décerné pour vous autoriser à entrer dans la maison d'habitation en vue d'arrêter ou d'appréhender le*

between the hour of ........... a.m./p.m., on the ........... day of ........... , yr. ...........
*prévenue à tout moment entre h de l'avant-midi/après-midi du jour de an*

and the hour of ........... a.m./p.m., on the ........... day of ........... , yr. ...........
*et h de l'avant-midi/après-midi du jour de an*

subject to the condition that you may not enter the dwelling-house unless you have, immediately before entering the dwelling-house, reasonable grounds to believe that the person to be arrested or apprehended is present in the dwelling-house.
*Toutefois, vous n'avez pas le droit d'entrer dans la maison d'habitation à moin d'avoir, immédiatement avant d'y entrer, des motifs raisonnables de croire que la personne devant être arrêtée ou appréhendée se trouve dans la maison d'habitation.*
[And where applicable] Whereas there are reasonable grounds to believe that prior announcement of the entry would ***
*[S'il y a lieu] Attendu qu'il y a des motifs raisonnables de croire que le fait de prévenir avant de pénétrer dans la maison d'habitation : ***

(a) expose the peace officer or any other person to imminent bodily harm or death;
*exposerait l'agent de la paix ou toute autre personne à des lésions corporelles imminentes ou à la mort;*

or / *ou*

(b) result in the imminent loss or imminent destruction of evidence relating to the commission of an indictable offence.
*entraînerait la perte ou la destruction imminente d'éléments de preuve relatifs à la perpétration d'un acte criminel.*

This warrant is also issued to authorize you to enter the dwelling-house without prior announcement, subject to the condition that you may not enter the dwelling-house without prior announcement unless you have, immediately before entering the dwelling-house, ***
*Le présent mandat est également décerné pour vous autoriser à entrer dans la maison d'habitation sans prévenir. Toutefois, vous n'avez pas le droit d'entrer dans la maison d'habitation sans prévenir à moins d'avoir, immédiatement avant d'y entrer, ***

(a) reasonable grounds to suspect that prior announcement of the entry would expose the peace officer or any other person to imminent bodily harm or death
*des motifs raisonnables de soupçonner que le fait de prévenir de l'entrée dans la maison d'habitation exposerait l'agent de la paix ou toute autre personne à des lésions corporelles imminentes ou à la mort ;*

or / *ou*

(b) reasonable grounds to believe that prior announcement of the entry would result in the imminent loss or imminent destruction of evidence relating to the commission of an indictable offence.
*des motifs raisonnables de croire que le fait de prévenir avant de pénétrer dans la maison d'habitation entraînerait la perte ou la destruction imminente d'éléments de preuve relatifs à la perpétration d'un acte criminel.*

The authorization to enter the dwelling house for the purpose of arresting or apprehending the accused shall be carried out in accordance with following terms and conditions:
*L'autorisation d'entrer dans la maison d'habitation dans le but d'arrêter ou d'appréhender le prévenu sera exécutée conformément aux conditions suivantes :*

Date ........................

(conditions to be specified / *conditions à préciser*)

I hereby certify that I have compared this document with the original and that it is a true and correct copy thereof

*J'ai comparé le présent document a l'original et je certifie qu'il s'agit d'une copie conforme et exacte.*

DATED this ........... day of ........... , yr. ...........
*FAIT ce jour de an*

at the ........................................................................
*á(au)*

of ........................................................................
*de*

in the Province of Ontario / *dans la province de l'Ontario*

Clerk of the Court, Province of Ontario
*Greffier, Province de l'Ontario*

Judge, or Justice of the Peace / *Juge ou juge de paix*

*** Choose applicable recital.
*Choisir l'attendu qui s'applique.*

CCO-7-475-1 (rev. 07/04) (posted 13/08/04)    *inCHARGE (12/04)*