UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

IN THE MATTER OF
THE EXTRADITION OF                    MISC. NO. 1:06MC40
RAELIN SHAWN COLEMAN

**RELATOR'S MOTION TO DENY CERTIFICATION FOR EXTRADITION**

Comes now, the relator, Raelin Shawn Coleman, hereinafter "Coleman," through his attorney, Brian J. Kornbrath, Federal Public Defender, moving this Court, pursuant to Title 18 United States Code §3184, to deny the request for extradition sought against him by the Government of Canada.  It is Coleman's contention that extradition is barred under a "double jeopardy" provision (Article 4) of the applicable treaty between the United States and Canada, i.e. The Treaty on Extradition Between the United States and Canada of 1971, hereinafter the "Treaty."

By way of background, a complaint is pending against Coleman pursuant to Title 18 U.S.C. §3184 in which the Government of Canada seeks Coleman's extradition to face criminal charges of attempted murder; discharge of a firearm with intent to endanger life; possession of a weapon for the purpose of committing an offence and pointing a firearm at another person.  Various attachments to the complaint include an affidavit from the investigating officer in the City of Windsor, Ontario, Canada.

The facts in support of the request for extradition essentially establish that on August 22, 2005, Coleman and two other women traveled from Detroit, Michigan to a residence located at 1348 Elsmere in Windsor, Ontario, Canada.  A dispute developed there with one of the women's ex-roommate and Coleman returned to the Detroit area in order to retrieve a shotgun.  Coleman

went back to the same residence located in Windsor, Ontario Canada.  Coleman took the shotgun out of his vehicle and got into a confrontation with one of the residents there.  During this confrontation, Coleman pointed the shotgun at Timothy Fisher and fired one shot, striking Fisher in the upper left thigh.  Thereafter, Coleman and the women left the scene.  Coleman threw the shotgun in the Detroit River before returning alone to the United States.

The above-referenced fact pattern was used to prosecute Coleman in the United States District Court in the Eastern District of Michigan.  In <u>United States of America v. Raelin Lavar Coleman</u>, 05-CR-80806-DT-01, Coleman was convicted of Transportation of a Firearm in Interstate or Foreign Commerce with the Intention of Committing a Crime, in violation of 18 U.S.C. §924(b).  On January 27, 2006, Coleman appeared for a guilty plea hearing.  Attached hereto is the "RULE 11 PLEA AGREEMENT" utilized in Coleman's federal criminal prosecution.  Of critical importance to Coleman's claim is the "parties stipula[tion] that the following facts are true" as contained on page 2 and 3 of the plea agreement:

> On August 22, 2005, Raelin Coleman was in a dispute with an individual known to law enforcement at his residence in Windsor, Ontario, Canada.  COLEMAN, along with two females (identified as Halimo RIRASH and Ulimo RIRASH), left the victim's residence and entered the United States by means of the Detroit-Windsor Tunnel at approximately 0052 hours on August 23, 2005.  COLEMAN drove to his residence in Southfield, Michigan and retrieved a Remington Model 870 12 gauge shotgun, serial number D268497A. COLEMAN placed the shotgun in his vehicle and returned to the victim's residence in Canada.
>
> On August 23, 2005, at approximately 0220 hours, COLEMAN arrived at the victim's residence in Windsor, Ontario, Canada, where COLEMAN, as well as the two females exited the vehicle.  An argument again ensued.  COLEMAN retrieved the previously identified Remington 870 shotgun from his vehicle. COLEMAN then fired one shot at the victim from close range, striking him in the upper left thigh area.  COLEMAN returned to the identified vehicle, along with the two females and departed.

> COLEMAN discarded the identified Remington 870 shotgun into the Detroit River. At approximately 0246 hours, COLEMAN re-entered the United States via the Ambassador Bridge, Detroit, Michigan.

Equally important to Coleman's instant claim is the fact that his federal sentence was increased based on this same alleged misconduct. Attached hereto is a copy of Coleman's federal pre-sentence report. Coleman received a six-level increase under USSG §2K2.1 for possessing a firearm with intent to commit another offense. The pre-sentence report's "Offense Conduct" section again references the factual stipulation contained in Coleman's plea agreement to support this guideline increase. As the attached judgment order reflects, on April 27, 2006, Coleman was sentenced to 18 months in custody.

Finally, attached to the instant complaint is the extradition treaty between the United States and the Government of Canada. According to Article 4 of the Treaty:

> (1) Extradition shall not be granted in any of the following circumstances:
>
>> (I) When the person whose surrender is sought is being proceeded against, or has been tried and discharged or punished in the territory of the requested State for the offense for which his extradition is requested.

<u>        Legal Argument</u>:

In an extradition proceeding pursuant to 18 U.S.C. §3184, the Court is required to determine whether the United States and the requesting country are parties to a valid extradition treaty, whether the accused is in fact the person who has been charged by the requesting state, whether the arrest warrant from the requesting state is outstanding, whether the offenses of which the accused is charged are extraditable under the treaty, and whether there is probable cause to believe the accused committed the crime. <u>Matter of Extradition of Lui</u>, 939 F.Supp.934 (D.

Mass. 1996).

Here, Coleman is attacking the claim that the offenses for which he is charged are extraditable under the treaty. He bases his argument on language contained in Article 4 of the extradition treaty between the United States and Canada where the two sovereigns agreed not to extradite for prosecution persons already "tried and discharged or punished in the territory of the requested State for the offense for which his extradition is requested." Such provisions, commonly termed "double jeopardy" clauses, have become common to most extradition treaties. See Galanis v. Pallanck, 568 F.2d 234, 238 (2nd Cir. 1977). Interpretation of an international treaty begins with the language itself unless it effects a result inconsistent with the parties' intentions. Sumitomo Shoji America, Inc. v. Avagliano, 457 U.S. 176, 180 (1982). Interpreting a treaty thus starts with the text of the treaty and the context in which the written words are used. Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa, 482 U.S. 522, 534 (1987).

In Sindona v. Grant, 619 F.2d 167 (2nd Cir. 1980), the Court was required to interpret the meaning of the "double jeopardy" clause of the extradition treaty between the United States and the Republic of Italy. Relying on an extended analysis by a noted commentator, Bassiouni, International Extradition and World Public Order 452-459 (1974), the Court noted that the "double jeopardy" clause found in extradition treaties:

> applied "more frequently" when the requested state has already commenced prosecution for the "the same, meaning identical, conduct, " id. at 455. But he adds the terms "same offense" and "same conduct" are subject to broad interpretative leeway, id. 455-56. "Same conduct" may range from "identical acts" to "multiple acts committed in more than one place and at different times but related by the actor's initial design:; "same offenses" may range from "identical charges" to "related . . . but not included (offenses)" Id. Thus, he

4

>observes, the scope of any double jeopardy provision will hinge in large part on interpretations given these terms that are borrowed from the domestic law and policies of the contracting parties.

Sindona v. Grant, 619 F.2d at 177.

The Court in Grant accordingly approved the methodology utilized by the district court when interpreting the "double jeopardy" clause of the extradition treaty at issue. This included "a modified and more flexible test of whether the same conduct or transaction underlies the criminal charges in both transactions." Id. In particular, the Court approved both the standard first outlined in Ashe v. Swenson, 397 U.S. 436, 453-54 (1970)(the "Double Jeopardy Clause requires the prosecution, except in most limited circumstances, to join at one time all the charges against a defendant which grow out of a single criminal act, occurrence, episode or transaction."), and the Department of Justice's Petite policy, Petite v. United States, 361 U.S. 529, 530-31, which provides: No federal case should be tried when there has been a state prosecution for substantially the same act or acts without a recommendation having been made by the Assistant Attorney General demonstrating compelling Federal interests for such prosecution. Sindona v. Grant, 619 F.2d at 178.

Under either the Ashe v. Swenson standard or the Petite policy standard referenced by the Court in Grant, Coleman contends that his extradition is clearly barred by the double jeopardy clause of the extradition treaty with Canada. The factual stipulation between the United States and Coleman during the federal prosecution is nearly identical to the fact pattern used by the Government of Canada to support Coleman's extradition for attempted murder; discharge of a firearm with intent to endanger life; possession of a weapon for the purpose of committing an offence and pointing a firearm at another person. That stipulation bears to be repeated verbatim

as is contained in page 2 and 3 of the federal plea agreement between the United States and Coleman:

> On August 22, 2005, Raelin Coleman was in a dispute with an individual known to law enforcement at his residence in Windsor, Ontario, Canada. COLEMAN, along with two females (identified as Halimo RIRASH and Ulimo RIRASH), left the victim's residence and entered the United States by means of the Detroit-Windsor Tunnel at approximately 0052 hours on August 23, 2005. COLEMAN drove to his residence in Southfield, Michigan and retrieved a Remington Model 870 12 gauge shotgun, serial number D268497A. COLEMAN placed the shotgun in his vehicle and returned to the victim's residence in Canada.
>
> On August 23, 2005, at approximately 0220 hours, COLEMAN arrived at the victim's residence in Windsor, Ontario, Canada, where COLEMAN, as well as the two females exited the vehicle. An argument again ensued. COLEMAN retrieved the previously identified Remington 870 shotgun from his vehicle. COLEMAN then fired one shot at the victim from close range, striking him in the upper left thigh area. COLEMAN returned to the identified vehicle, along with the two females and departed.
>
> COLEMAN discarded the identified Remington 870 shotgun into the Detroit River. At approximately 0246 hours, COLEMAN re-entered the United States via the Ambassador Bridge, Detroit, Michigan.

This fact pattern reflects the same criminal act, occurrence, episode and transaction as utilized by the Government of Canada to support its claim that Coleman should be extradited to face the aforementioned criminal charges. These facts clearly constitute substantially the same acts as the federal prosecution and the criminal prosecution later contemplated in Canada. Finally, Coleman's federal sentence was increased based on same misconduct as alleged in the federal plea agreement and the pre-sentence report. Coleman received a six-level increase pursuant to USSG §2K2.1 for this same transaction. As a result, Coleman was previously punished for this same misconduct.

Conclusion:

Based on the foregoing, this Court is respectfully requested to rely upon the language contained in Article 4 of the extradition treaty with the Government of Canada ("has been tried and discharged or punished in the territory of the requested State for the offense for which his extradition is requested") to find that the request for extradition from the Government of Canada should be denied.

        Respectfully submitted,

        **RAELIN SHAWN COLEMAN**

        The Relator

By: *s/ Brian J. Kornbrath*
    Brian J. Kornbrath
    WV State Bar No. 7330
    Attorney for Defendant
    Federal Public Defender Office
    230 West Pike Street; Suite 360
    Clarksburg, West Virginia 26302
    Tel. (304) 622-3823
    Fax. (304) 622-4631
    E-Mail. Brian_Kornbrath@fd.org

**CERTIFICATION OF SERVICE**

I hereby certify that on January 17, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>David E. Godwin, Esq.
>Office of the United States Attorney
>320 West Pike Street
>Clarksburg, West Virginia 26302
>(304) 623-7030

By: *s/ Brian J. Kornbrath*
Brian J. Kornbrath
WV State Bar No. 7330
Attorney for Defendant
Federal Public Defender Office
230 West Pike Street; Suite 360
Clarksburg, West Virginia 26302
Tel. (304) 622-3823
Fax. (304) 622-4631
E-Mail. Brian_Kornbrath@fd.org