**JAN 27 2006**

CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. 05-80806 |
| Plaintiff, | HONORABLE: GEORGE CARAM STEEH |
| v. | OFFENSE: 18 U.S.C. §924(b), Transportation of a Firearm in Interstate and Foreign Commerce with Intent to Commit a Crime |
| D-1, RAELIN LEVAR COLEMAN | STATUTORY INCARCERATION PERIOD: Maximum of 10 years in Prison |
| Defendant. | STATUTORY FINE AMOUNT: Up to $250,000 |

_____/

## RULE 11 PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant,

defendant's attorney, and the United States Attorney for the Eastern District of

Michigan ("U.S. Attorney") (collectively "the parties") agree as follows:

1.   Guilty Plea.

1

A.    Defendant will plead guilty to count one of the indictment. Any other counts against defendant in this case will be dismissed. Defendant acknowledges that the court may consider these other counts and any other relevant conduct in determining the appropriate sentence.

B.    The elements of the offense(s) that the government would need to prove beyond a reasonable doubt at trial are:

i.    Defendant transported a firearm in interstate and foreign commerce;

ii.    The defendant did so with the intent to commit an offense punishable by a term of imprisonment exceeding one year.

C.    The parties stipulate that the following facts are true:

On August 22, 2005, Raelin Coleman was in a dispute with an individual known to law enforcement at his residence in Windsor, Ontario, Canada. COLEMAN, along with two females (identified as Halimo RIRASH and Ulimo RIRASH), left the victim's residence and entered the United States by means of the Detroit-Windsor Tunnel at approximately 0052 hours on August 23, 2005. COLEMAN drove to his residence in Southfield, Michigan and retrieved a a Remington Model 870 12

2

gauge shotgun, serial number D268497A. COLEMAN placed the shotgun in his vehicle, and returned to the victim's residence in Canada.

On August 23, 2005, at approximately 0220 hours, COLEMAN arrived at the victim's residence in Windsor, Ontario, Canada, where COLEMAN, as well as the two females exited the vehicle. An argument again ensued. COLEMAN retrieved the previously identified Remington 870 shotgun from his vehicle. COLEMAN then fired one shot at the victim from close range, striking him in the upper left thigh area. COLEMAN returned to the identified vehicle, along with the two females and departed.

COLEMAN discarded the identified Remington 870 shotgun into the Detroit River. At approximately 0246 hours, COLEMAN re-entered the United States via the Ambassador Bridge, in Detroit, Michigan.

## 2.   Sentence Agreement.

A.   Sentencing Guidelines. Defendant understands that, under the Sentencing Reform Act, the court will make factual and legal findings about defendant's conduct and criminal history. Defendant understands that these findings will be made based upon information provided by the parties and the United States Probation Officer who prepares the presentence investigation report, the stipulations contained within this agreement, and any other reliable evidence, including hearsay. The court will make these findings applying a preponderance

3

of the evidence standard of proof.

Attached to this agreement are stipulated Sentencing Guidelines worksheets. These worksheets reflect the agreement of the parties as to the applicable Sentencing Guidelines calculations. Neither party will seek, recommend, or advocate the application of Sentencing Guidelines calculations different from this stipulation.

Defendant understands that the Sentencing Guidelines findings made by the court will be used to calculate a sentence range under the Sentencing Guidelines. Defendant understands that the court is not bound by the agreement of the parties as to the correct Sentencing Guideline range. Defendant further understands that in determining the sentence, the court is required to consider the applicable Sentencing Guideline range, but is not required to adhere to that range. Defendant understands that, under the Sentencing Reform Act, the court is required to consider all of the factors enumerated in 18 U.S.C. § 3553(a), in addition to the Sentencing Guideline range, in determining an appropriate sentence.

B.     Imprisonment. Pursuant to Rule 11(c)(1)(C), the parties agree that a sentence of imprisonment within the recommended Sentencing Guideline range of 18 to 24 months, to be followed by a term of supervised release of between 2 and 3 years, is reasonable and an appropriate disposition of the case. Therefore, the parties agree that they will not seek, recommend or advocate for a sentence outside of that range. Defendant further agrees that if his criminal history category is determined to be higher than that reflected in the attached worksheets, then a term

4

of imprisonment within the Sentencing Guideline range corresponding to his stipulated adjusted offense level and the higher criminal history category, followed by the requisite term of supervised release, will be a reasonable and appropriate disposition of the case, and defendant will not seek, recommend or advocate for a sentence outside of that higher sentence range.

The parties understand and agree that the court retains sole discretion to sentence within, or outside of the recommended Sentencing Guideline range of 18 to 24 months. A sentence outside this range will not be a basis for either party to withdraw from this agreement.

C.   Fine. Pursuant to Rule 11(c)(1)(C), the U.S. Attorney agrees that a fine no higher than $ 40,000 is an appropriate disposition of the case.

D.   Supervised release. The court will impose a term of supervised release to follow imprisonment. If defendant violates a condition of release, the court will then be able to impose an additional prison sentence that could be as long as the original term of release. This agreement does not limit the sentence the court could impose in that situation.

E.   Special Assessment. Defendant must pay a special assessment of $100 and must bring the receipt to court on the day of sentencing.

F.   Restitution. Defendant agrees that the court shall order restitution, pursuant to any available provision of law, for any loss caused to: (1) the victims of any offense charged in this case (including dismissed counts), and (2) the victims of any criminal activity that was part of the same course of conduct or

5

same scheme or plan as defendant's charged offenses.

3.    Subsequent challenges to conviction or breach of agreement.

A.    If at any time defendant tries to withdraw the guilty plea to any count; attacks the validity of the conviction on any count; or fails to comply with the terms of the agreement, the U.S. Attorney is released from its promises under this agreement and, in particular, may prosecute defendant on any charge that it agreed to dismiss or not to bring. In addition, if defendant's conviction on any count is vacated, the U.S. Attorney may request resentencing on any remaining count.

B.    Defendant waives a double jeopardy defense as to any charges the U.S. Attorney brings or pursues under the previous paragraph. Defendant waives any speedy trial or statute of limitations defense for the period of time between the date defendant signed this agreement and (a) the date an order permitting withdrawal of the plea, vacating the plea, or reversing the conviction on any count becomes final, or (b) the date the U.S. Attorney notifies defendant in writing of defendant's failure to comply with the agreement; whichever is later.

4.    Waiver of appeal rights. If the court imposes a sentence that does not exceed the top of the range described in ¶ 2 of this agreement, defendant waives any right he may have to appeal his conviction or sentence. If the court imposes a sentence that is not below the bottom of the range specified in ¶ 2, the U.S. Attorney waives any right he may have to appeal the sentence.

5.    No other terms. This document is the entire agreement between defendant

6

and the U.S. Attorney with respect to the charges noted above in this criminal case. It does not prevent any civil or administrative actions against defendant or any property by the U.S. Attorney or any other party. There are no other parties to this agreement.

6.     Acceptance of agreement. This offer automatically expires unless it has been received (fully signed) in the Office of the U.S. Attorney by 5:00 P.M. on

7

Wednesday, November 16, 2005. The U.S. Attorney reserves the right to modify

or revoke the offer prior to defendant's plea of guilty.

STEPHEN J. MURPHY
United States Attorney

Dated: 1/26/06

JOHN FREEMAN
Assistant U.S. Attorney

Dated: 11/4/05

JENNIFER GORLAND
Assistant U.S. Attorney

By signing this document, the defendant acknowledges that he has read (or
been read) this entire document, understands it and agrees to its terms; and also
acknowledges that he is satisfied with his attorney's advice and representation.

Dated: 1-25-06

RAELIN LAVAR COLEMAN
Defendant

Dated: 1-25-06

RICK HELFRICK
Attorney for Defendant

8