UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

IN THE MATTER OF
THE EXTRADITION OF                     Misc. No. **1:06MC40**
RAELIN SHAWN COLEMAN

UNITED STATES' RESPONSE TO RELATOR'S MOTION TO DENY
CERTIFICATION FOR EXTRADITION

      The United States Attorney for the Northern District of West Virginia, by her assistant, David E. Godwin, on behalf of the Government of Canada, requests that the court overrule and deny the prayer of the relator's motion and authorize the extradition of Mr. Coleman.

**A.**      **General:**

      1.      To order that Coleman be surrendered to Canadian authorities, pursuant to 18 U.S.C. § 3184 et seq. and caselaw, the court must determine that the following conditions are present: 1) The court has jurisdiction to conduct the extradition hearing, and proper jurisdiction over the fugitive; 2) The fugitive is being sought for offenses for which the applicable treaty permits extradition; and 3) There is sufficient evidence to establish that the individual appearing in court is the fugitive sought, and committed the offense charged. *See*, *Bingham v. Bradley*, 241 U.S. 511, 516-517 (1916); *McNamara v. Henkel*, 226 U.S. 520, 523 (1913); *Ornelas v. Ruiz*, 161 U.S. 502, 508, 509 (1896); *Zanazanian v. United States*, 729 F.2d 624, 625-626 (9th Cir. 1984); *Gallina v. Fraser*, 177 F. Supp. 856, 860 (D. Conn.), aff'd 278 F.2d 77 (2d Cir. 1959), *cert. denied* 364 U.S. 851 (1960).

      2.      Each of these three are adequately supported by the affidavits and other documents filed with the Complaint.

3.    However, Coleman seeks to defeat his return to Canada for prosecution by claiming that Article 4 of the pertinent treaty precludes his extradition.  More particularly, Coleman claims that he has already been punished for his international, criminal episode of August 23, 2005, and accordingly, he cannot be returned to Canada without violating this "double jeopardy" provision of the treaty.   Therefore he is claiming that the extradition being sought is for offenses for which the treaty does not permit extradition (condition 2 above).

4.    Coleman's claim is not valid for the reason that he has not been charged, tried, and convicted of the same offenses for which the extradition is sought; and, he was not punished by the United States District Court for the Eastern District of Michigan for his criminal conduct in Windsor, Ontario, Canada, of August 23, 2005.

**B.    Law:**

1.    Article 4 of the extradition treaty entered into force between the United States and Canada on March 22, 1976, and remaining in force today,  provides, in pertinent part:

> (1) Extradition shall not be granted in any of the following circumstances:
>
> (I) when the person whose surrender is sought is being proceeded against, or has been tried and discharged or punished in the territory of the requested state for the offense for which his extradition is requested.

2.    The court must construe the treaty's provisions liberally, in a manner favoring extradition.  *Factor v. Laubenheimer*, 290 U.S. 276, 283, 293-294 (1933); *United States v. Wiebe*, 733 F.2d 549, 554 (8th Cir. 1984).  More specifically, since there is an overriding interest in carrying out the United States' treaty obligation to surrender the fugitive to be tried for his alleged offenses, the treaty "should be construed more liberally than a criminal statute or the technical  requirements  of criminal  procedure."  *Factor*, *supra*, at 290 U.S. 298; *Wiebe*, *supra*;

*McElvy v. Civiletti*, 523 F. Supp. 42, 47-49 (S.D.Fla. 1981).  Accordingly, "[f]orm is not to be insisted upon beyond the requirements of safety and justice." *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925); *United States ex rel Rauch v. Stockinger*, *supra*, at 269 F.2d 687.

       3.     In *Stowe v. Devoy*, 588 F.2d 336 (2nd Cir. 1978), Stowe had been charged with hashish-related offenses in Canada.  He was arrested in the United States and was admitted to bail pending the extradition procedings.  While free on bail, he committed a hashish-related offense against the state of New York.  He pled guilty to the New York offense and was sentenced.  In relation to the extradition proceedings, Stowe claimed that the New York judge considered the conduct in Canada when he sentenced him in New York.  The New York judge confirmed this in a letter to the extradition court.  The extradition was denied on this basis.  The government appealed and the district court was reversed.  In response to Stowe's claim that Article 4 of the extradition treaty with Canada barred the return of a fugitive "if the fugitive has been [e]ither 'tried and discharged' [o]r if he has been 'punished'," the Second Circuit said:

> To read the provision so broadly does violence not only to its language but to the reason and intent of the Treaty by giving any court the power to subvert the extradition agreement.  The Article does not apply unless two distinct requirements are satisfied: (1) the fugitive must have been "tried" for the offense in question, [a]nd (2) the trial must have resulted in discharge or punishment.

and

> To activate that provision, the charges upon which a fugitive has been "punished" in the United States not only must cover the same acts as those which are the subject of the extradition request but must also have been the subject of formal charges (upon which the defendant was "tried") before the "punishing" court.

*Stowe,* 588 F.2d at 340.

       4.     Coleman, in his motion, relies upon *Sindona v. Grant,* 619 F.2d 167 (2nd Cir. 1980).  That case is helpful to this case but it does not support Coleman's opposition to his extradition. Sindona was an Italian citizen.  The case involved a complex factual scenario

involving fraudulent activity in Italy and in the United States. Essentially, Sindona and his associate profited from fraudulent activities in Italy that resulted in the failure of two Italian financial institutions. Proceeds from the Italian crimes were used to acquire interests in two American financial institutions, which also failed as a result of fraud commited by Sindona and his associate. Sindona sought to avoid being returned to Italy using a claim that he had already been charged and punished in the United States. (The extradition treaty with Italy has the same Article 4 as the Canadian treaty.) The district court granted a writ of habeas corpus blocking the extradition. The government appealed, advocating that the *Blockburger* test[1] was the proper analysis to use in considering a claim under Article 4. The Second Circuit ruled that the scope of the "double jeopardy" provision was broader than the *Blockburger* rule. However, the circuit court reversed the district court upon determining that Article 4 did not block the return of Sindona to Italy. The most pertinent language of the opinion is as follows:

> Although the alleged Italian crime may have been the "but-for" cause of the alleged American offenses in providing Sindona with the wherewithal, it is not the crime for which the United States is proceeding against him. Indeed, principles of territorial jurisdiction make it extremely doubtful that this country could proceed against Sindona for the overwhelming bulk of the matters being charged in Italy or that Italy could prosecute him for most of the charges in the American indictment. Article VI(1) of the Treaty could not have been intended to have the consequence that substantial elements of crime should be left unpunishable."

*Sindona,* 619 F.2d at 179.

5.    It is a general policy of the Department of Justice, not a prohibition of the double

---

[1] In *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct.180 (1932), in response to the question of whether two offenses occur when one act violates two separate statutes, the Supreme Court established the rule that "where the same act or transaction consituites a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."

jeopardy clause, that several offenses arising out of a single transaction should not be the basis of successive federal prosecutions, nor should a violation already prosecuted at the state or local level be federally prosecuted without the approval of the Attorney General. *Petite v. United States,* 361 U.S. 529 (1960). This policy, commonly referred to as the "Petite policy" is entitled the "Dual and Successive Prosecution Policy" and is found in the United States Attorneys' Manual (USAM) at § 9-2.031. A copy of this policy is attached hereto. As stated in the second paragraph of the policy:

> The purpose of this policy is to vindicate substantial federal interests through appropriate federal prosecutions, to protect persons charged with criminal conduct from the burdens associated with multiple prosecutions and punishments for substantially the same act(s) or transaction(s), to promote efficient utilization of Department resources, and to promote coordination and cooperation between federal and state prosecutors.

**C.** **Analysis:**

    1. This court must make the following determinations:

        a) Does Canada intend to prosecute Coleman for the same offense for which he has already been prosecuted in the United States District Court in Detroit?

        b) Has Coleman already been punished by the United States government for his criminal conduct in Canada?

        c) Does Canada have legitimate interests that have not yet been addressed?

    2. **Canada does not intend to prosecute Coleman for the same offense for which he has already been prosecuted in the United States District Court in Detroit.**

Canada has requested that the United States return Coleman to its jurisdiction to answer the charges of Attempted Murder, Discharge of a Firearm with Intent to Endanger Life, Possession of a Weapon for the Purpose of Committing an Offence, and, Pointing a Firearm at Another Person.

Coleman was convicted in the Eastern District of Michigan for the offense of Transportation of a Firearm in Interstate and Foreign Commerce with the Intention of Committing a Crime in violation of 18 U.S.C. § 924(b).

None of the Canadian charges is the same offense as the United States conviction. The Canadian offenses have different elements and different harms and occurred after the United States offense was complete. The only Canadian charge that has a legal resemblence to the United States conviction is the Possession of a Weapon for the Purpose of Committing an Offence. This could be characterized as a continuation of the offense committed against the United States, but it is not the same offense. The § 924(b) offense was complete when Coleman left the United States possessing a firearm with the intention of committing a crime. Coleman's commission of the Canadian possession offense began after the United States offense was complete; accordingly, it can not be the same offense.[2]

3. **Coleman has not already been punished by the United States government for his criminal conduct in Canada.**

Despite Coleman's argument to the contrary, the record from the Eastern District of

---

[2] In regard to the similarity of the § 924(b) offense and the Canadian charge of Possession of a Weapon for the Purpose of Committing an Offence, I am informed by an official of the Department of Justice of Canada that Mr. Coleman "may raise autrefois acquit or res judicata in the Canadian courts if he feels double jeopardy has occurred, and may also raise the rule of specialty as a defence to the Canadian charge if he wishes to argue that specialty should apply. These defences should be raised in the Canadian courts."

Michigan, when compared to the United States Sentencing Guidelines, makes it clear that Coleman has not been punished for his violent behavior in Windsor, Ontario, Canada.

Page 6 of the presentence report prepared in the Eastern District of Michigan contains the sentencing guideline calculation which supports the 18-month sentence imposed on Coleman. It states:

**Count 1 - Transportation of a Firearm in Interstate and Foreign Commerce with Intent to Commit a Crime**

| | | |
|---|---|---|
| 16. | Base Offense Level: The base offense level for a violation of 18 U.S.C. § 924(b) is located at § 2K2.1(a)(7), where a base offense level of 12 is required. | 12 |
| 17. | Specific Offense Characteristics: As the defendant possessed and transported the firearm with intent to commit another felony offense, pursuant to § 2K2.1(b)(5), four levels are added. However, as the offense level is less than 18, it is increased to 18. | 18 |
| 18. | Victim Related Adjustment: None. | 0 |
| 19. | Adjustment for Role in the Offense: None. | 0 |
| 20. | Adjustment for Obstruction of Justice: None. | 0 |
| 21. | Adjusted Offense Level (Subtotal): | 18 |
| 22. | Adjustment for Acceptance of Responsibility: The defendant accepted responsibility for his actions and provided timely information to the government concerning his involvement in the offense. Pursuant to § 3E1.1(a) and (b), the defendant is eligible for a three level reduction for acceptance of responsibility. | -3 |
| 23. | Total Offense Level: | 15 |
| 24. | Chapter Four Enhancements: None. | 0 |
| 25. | **Total Offense Level**: | **15** |

The district court determined that Coleman was in Criminal History Category I and accordingly had a guideline range of from 18 to 24 months. He was sentenced to 18 months.

Had the United States court sentenced Coleman for his violent behavior in Canada, it would have used § 2A2.1 Assault with Intent to Commit Murder; Attempted Murder. This

would have resulted in an offense level calculation ranging from Level 29 up to Level 37, depending upon factual deteminations by the court.  Even if the defendant convinced the district court that § 2A2.2 <u>Aggravated Assault</u> was the appropriate guideline provision to use, his offense level would have been calculated to be Level 24[3] instead of the Level 18 calculated under § 2K2.1 <u>Unlawful Receipt, Possession, or Transportation of Firearms etc.</u>  Section 2K2.1 is a guideline used to determine the appropriate offense level for a variety of firearms offenses.  It does not, and is not intended to, establish a reasonable sentence for violent behavior.

Coleman correctly recites that the parties referred to his behavior in Canada in the plea agreement and in the court's sentencing documents in the Eastern District of Michigan prosecution.  The fact that Coleman committed crimes with the firearm when he arrived in Canada is relevant to establish that he had the intent to commit an offense with the firearm as he transported it in international commerce.  However, his United States crime was complete upon his unlawful transportation of the firearm, whether or not he subsequently committed an offense in Canada.  The criminal acts Coleman committed in Canada **evidenced his intent**; but, those acts **were not part of his crime** against the United States.

4. **Canada has legitimate interests which have not been addressed.**

The application of the Petite policy to this case requires some extrapolation.  In this matter, the question is whether Canada has the right to "vindicate substantial . . . interests."  An extensive elaboration of this issue is not needed.  The defendant was charged and punished for a firearms offense in the United States and given a relatively light sentence.  The crimes of

---

[3] Coleman's "best case scenario," had the United States court attempted to punish him for his violent behavior in Canada, would be 37 months.  (Level 24 for Aggravated Assault minus 3 levels for Acceptance of Responsibility equals Level 21, which has a range of 37 to 46 months in Criminal History Category I).

violence committed in Canada were not vindicated in the United States court. Coleman's criminal liability for this conduct has not been litigated in any court and he has not been held accountable by any government.

Remembering that extradition is a matter in which reciprocity is important. United States courts should consider how their interests would be weighed if the factual scenario were reversed. For example, had a Canadian crossed the international border into the United States, with the intent to commit violent offenses and, upon his arrival in the United States, shot and wounded a resident; the United States would not consider the matter rectified by a firearms conviction in Canada. To the contrary, the United States would expect Canada to send the offender back to the United States for prosecution.

**D.**     **Conclusion**

The record of this case adequately establishes that a) this court has jurisdiction; 2) Coleman is being sought for offenses for which the applicable treaty permits extradition; and 3) there is sufficient evidence to establish that Coleman is the fugitive sought, and committed the offense charged. Accordingly, the court should order that Raelin Shawn Coleman be surrendered to Canadian authorities pursuant to the existing treaty.

Respctfully submitted,

SHARON L. POTTER
United States Attorney

By:     /s/   David E. Godwin
David E. Godwin, WV Bar # 1407
Assistant United States Attorney
United States Attorney's Office
320 W. Pike Street, Suite 300
Clarksburg, WV 26301-2710
Phone number - (304) 623-7030
Facsimile number - (304) 623-7031
David.Godwin@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I certify that on January 29, 2007, I electronically filed the foregoing **UNITED STATES' RESPONSE TO RELATOR'S MOTION TO DENY CERTIFICATION FOR EXTRADITION** with the Clerk using the CM/ECF system, which will send notification of such filing to Brian J. Kornbrath, attorney for Raelin Shawn Coleman.

 /s/   David E. Godwin
David E. Godwin, WV Bar # 1407
Assistant United States Attorney
United States Attorney's Office
320 W. Pike Street, Suite 300
Clarksburg, WV 26301-2710
Phone number - (304) 623-7030
Facsimile number - (304) 623-7031
David.Godwin@usdoj.gov